# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 07-CV-2060 (JFB) (WDW)

RICHARD W. SCHROEDER,

Plaintiff,

VERSUS

SUFFOLK COUNTY COMMUNITY COLLEGE AND COUNTY OF SUFFOLK,

Defendants.

**MEMORANDUM AND ORDER**
June 22, 2009

JOSEPH F. BIANCO, District Judge:

Plaintiff Richard W. Schroeder ("plaintiff" or "Schroeder") brought this action on May 18, 2007, seeking money damages against defendants Suffolk County Community College ("SCCC") and County of Suffolk ("the County") (collectively, "defendants"), alleging that defendants discriminated against him on the basis of his disability, in violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.* ("ADA"), Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1991, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, 42 U.S.C. §§ 1981, 1983, 1985, and 1988, and the New York State Human Rights Law, Executive Law § 269 *et seq.* ("NYSHRL").

Defendants now move for summary judgment on all claims, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. As confirmed with plaintiff's counsel at oral argument, plaintiff has abandoned all claims with the exception of the ADA claim. For the reasons set forth below, the Court concludes, after carefully reviewing the record in this case, viewing all facts in the light most favorable to plaintiff and drawing all reasonable inferences therefrom in plaintiff's favor, that disputed issues of material fact exist with respect to plaintiff's claim arising under the ADA and, thus, defendants' summary judgment motion on the ADA claim is denied.

I. BACKGROUND

A. Facts

The facts described below are taken from the parties' depositions, affidavits, and exhibits, as well as the defendants' Rule 56.1

statement of facts ("Defs.' 56.1").[1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

Plaintiff is a campus security guard on SCCC's campus. (Defs.' 56.1 ¶ 1.) He holds the civil service title of Campus Security Guard I and has been employed in this position since October 1, 1979. (Pl.'s Opposition ¶ 2.) He has worked the 3:00 p.m. - 11:00 p.m. shift at the Ammerman Campus of SCCC for 29 years. (Pl.'s Aff. ¶ 9; Defs.' 56.1 ¶ 6.) Plaintiff currently holds a second job driving a school bus for 3.75 hours each morning. (Defs.' 56.1 ¶ 9.)

Plaintiff was injured while at work on or about March 13, 2001, when an automobile rolled over his right foot. (Pl.'s Opposition ¶ 3; Defs.' 56.1 ¶ 7.) Plaintiff was taken to St. Charles Hospital in Port Jefferson, New York by one of SCCC's patrol cars. (Defs.' 56.1 ¶ 7.) Physicians at the hospital took x-rays, prescribed medication, and advised plaintiff to follow up with his personal physician. (Defs.' 56.1 ¶ 7.) His course of treatment was physical therapy and rest. (Pl.'s Opposition ¶ 15; Defs.' 56.1 ¶ 7.) As a result of the injury, plaintiff claims that he continues to suffer from reflex sympathetic dystrophy (RSD) and uses a metronic implant. (Pl.'s Opposition ¶ 5.) Plaintiff also walks with a limp and continues to receive medical treatment for his injury. (Pl.'s Opposition ¶ 7; Pl.'s Aff. ¶ 4.)

On March 27, 2001, plaintiff filed an accident report with the defendant SCCC and a claim under New York State Worker's Compensation. (Pl.'s Opposition ¶ 3.) From about March 13, 2001 until July 5, 2001, plaintiff was out on Worker's Compensation leave. (Defs.' 56.1 ¶ 8.) He returned to work on or about July 5, 2001 without any limitations or restrictions on his duties, despite the fact that he continued to experience pain from his injury. (Defs.' 56.1 ¶ 8; Pl.'s Opposition ¶ 4.) Plaintiff claims that his physical therapy was discontinued by SCCC at the end of July 2004, even though he continued to experience difficulty walking and his physician had requested that additional services be provided. (Pl.'s Opposition ¶ 7.)

---

[1] The Court notes that plaintiff failed to file and serve a response to defendants' Local Rule 56.1 Statement of Facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not submit a Rule 56.1 statement, he did submit detailed opposition papers that outlined his factual position, including specific citations to the factual record. Thus, both the Court and defendants are able to easily discern the factual evidence upon which plaintiff is relying to create material issues of disputed fact to overcome summary judgment. Accordingly, in the exercise of its broad discretion, the Court will overlook this defect and will deem admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504.

2

In March 2005, on the advice of his doctor, plaintiff sought permission from his employer to use a cane to relieve the pressure on his foot, facilitate healing, and lessen the pain. (Pl.'s Aff. ¶ 5.) This request was allegedly refused by SCCC. (Pl.'s Aff. ¶ 5.) In or about June or July 2005, plaintiff approached John Williams ("Williams"), director of public safety for SCCC, and requested that he be permitted to use a cane while patrolling the SCCC campus. (Pl.'s Aff. ¶ 6; Defs.' 56.1 ¶ 10.) Williams denied this request. (Pl.'s Aff. ¶ 6; Defs.' 56.1 ¶ 11.) According to plaintiff, Williams told him, "[a]bsolutely not, until I hear from a higher authority." (Pl.'s Aff. ¶ 6.) Williams testified that he initially denied plaintiff's request because he "felt that the use of a cane by a security officer was inconsistent with the duties and responsibilities of their job." (Defs.' 56.1 ¶ 12; Williams Dep., at 20.)

Around this time, plaintiff responded to an All-Employee County Memorandum regarding requests for accommodations by persons with disabilities. (Pl.'s Opposition ¶ 10; Defs.' 56.1 ¶ 21.) Plaintiff submitted his request to Bruce Blower ("Blower"), the director of Suffolk County Handicapped Services. (Defs.' 56.1 ¶ 22.) By memorandum dated August 10, 2005, Blower notified Fritzi Rohl ("Rohl"), who was the director of SCCC's human resources department, that plaintiff had self-identified himself as disabled and that he requested the use of a cane to "do his full duties on the job." (Defs.' 56.1 ¶ 23; Petrowski Decl., Exh. Q.) By memorandum to Rohl dated August 29, 2005, Blower recommended that plaintiff be permitted to use a cane while on duty as a reasonable accommodation. (Defs.' 56.1 ¶ 24.) In the memorandum, Blower stated that a "security guard's essential job functions can be done while using a cane." (Yule Decl., Exh. 2.)

Williams discussed plaintiff's request for a cane with Rohl. Williams testified that Rohl agreed with Williams' decision to deny plaintiff's request, on the grounds that the use of a cane was inconsistent with the duties and responsibilities of Campus Security Guard I. (Defs.' 56.1 ¶ 20; Williams Dep., at 28.)

In or about the summer of 2005, Rohl referred plaintiff's request to Laurie Savona ("Savona"), Executive Assistant to the President and Affirmative Action/Compliance Officer for SCCC. (Defs.' 56.1 ¶ 25.) Savona then sent plaintiff a letter requesting medical documentation of his disability. (Defs.' 56.1 ¶ 25.) On August 31, 2005, plaintiff handed Savona a prescription note from his doctor, which stated, "cane dx: RSD right foot." (Defs.' 56.1 ¶ 26; Petrowski Decl., Exh. H.) Plaintiff then advised Savona that Williams had denied him use of the cane, and Savona advised Williams that she would make a determination on behalf of SCCC following receipt of medical documentation. (Defs.' 56.1 ¶ 26.) Plaintiff claims that thereafter, he "provided the defendant with mountains of documents, letters and prescriptions from various physicians that clearly state his diagnosis of RSD as well as crush injury to the right foot." (Pl.'s Opposition ¶ 29; Yule Decl., Exhs. 4, 5, 11, 12, 13, 14.)

On September 21, 2005, plaintiff was advised by letter from Savona that the SCCC had received documentation from plaintiff's physician stating that he was not disabled. (Defs.' 56.1 ¶ 28.) Plaintiff then "continued to ask if [he] could use the cane when the pain got too bad[,]" and Savona allegedly said no. (Pl.'s Aff. ¶ 8.) Savona referred plaintiff to a medical evaluation by the County Department of Health Services ("DOHS") in October 2005. (Defs.' 56.1 ¶ 29.) On October 26, 2005, DOHS issued a report to Rohl stating that plaintiff was "able to perform all duties as

3

required by title" and "recommend use of cane as needed[.]" (Defs.' 56.1 ¶ 30; Petrowski Decl, Exh. K.) On December 12, 2005, Savona advised plaintiff by letter that DOHS had concluded that plaintiff was not disabled and, thus, not entitled to accommodation under the ADA. (Defs.' 56.1 ¶ 32.) However, Savona did offer plaintiff the options of 1) using his cane if he changed his shift to the 11 p.m. - 3 a.m. shift, or 2) increasing the number of days he worked in a booth. (Defs.' 56.1 ¶ 33.)

On or about January 30, 2006, plaintiff used his cane during a fifteen minute break and was advised by Williams that he was not allowed to use a cane while on break. (Pl.'s Aff. ¶ 12.)

On August 28, 2007, plaintiff made another request by letter to Savona and Williams for use of his cane while on duty. (Defs.' 56.1 ¶ 34.) This request was referred to Geri Larson, Administrative Director for Employee Relations at SCCC, who advised plaintiff that "the most current documentation by the county medical department found you to be 'able to perform all duties required by title.' If your medical condition has changed, please provide me with medical documentation immediately[.]" (Defs.' 56.1 ¶ 34; Petrowski Decl., Exh. T.) Plaintiff did not respond to this request. (Defs.' 56.1 ¶ 35.)

In March 2006, Plaintiff filed charges of discrimination based on disability, in violation of the ADA and NYSHRL, with the New York State Division of Human Rights and the Equal Employment Opportunity Commission. (Defs.' 56.1 ¶ 4.) A right-to-sue letter was issued to plaintiff on February 21, 2007, in connection with such charges. (Defs.' 56.1 ¶ 5.)

B. Procedural History

Plaintiff filed this action on May 18, 2007. Defendants answered the complaint on July 17, 2007 and filed the instant motion on November 20, 2008. Plaintiff submitted his opposition on February 25, 2009. Defendants submitted their reply on March 11, 2009. Oral argument was held on May 14, 2009. The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

III. DISCUSSION

A. Failure to Accommodate Claim

Plaintiff alleges that defendants failed to honor requests for reasonable accommodation of his disability by denying him the use of a cane. As set forth below, given the disputed issues of fact in the record, summary judgment on this claim is unwarranted.

1. Legal Standard

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The statute defines 'discriminate' to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Felix v. New York City Transit Auth.*, 324 F.3d 102, 104 (2d Cir. 2003) (quoting 42 U.S.C. § 12112(b)(5)(A)).

To establish a *prima facie* case for failure to accommodate under the ADA, an employee has the burden to demonstrate that: "1) he was an 'individual who has a disability' within the meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). If plaintiff establishes a *prima facie* case, the burden shifts to the employer "to demonstrate that the . . . proposed accommodation would have resulted in undue hardship." *Id.* As the Second Circuit has noted, "[d]iscrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)).

5

## 2. Application

Here, defendants argue that plaintiff is unable to establish a *prima facie* case for failure to accommodate under the ADA because 1) plaintiff fails to show that he has a "disability" within the meaning of the statute, and 2) the accommodation at issue would have eliminated the "essential functions" of his job as a campus security guard. The Court examines each argument in turn.

### a. Disability

If plaintiff is not "disabled," as defined by the statute, then he is not entitled to the protections of the ADA, and his claim must be dismissed. The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An impairment substantially limits a major life activity other than work if it prevents an individual from performing an activity that the average person in the general population can perform, or if it significantly restricts the duration, manner, or condition under which an individual can perform the activity as compared to the ability of the average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1). Courts may consider the following factors in this analysis: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment. *See* 29 C.F.R. § 1630.2(j)(2).

"In determining whether an individual has a disability for purposes of the ADA and Section 504 [of the Rehabilitation Act], we have applied the three-step approach taken by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002). The Second Circuit has elaborated:

> Under the [*Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 641 (2d Cir. 1998) (adopting *Bragdon*)] analysis, plaintiff must first show that she suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified. In addition, the Supreme Court has recently clarified that the identified major life activity must be "of central importance to daily life." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002).

6

*Id.* (additional citations omitted). The determination as to whether or not plaintiff is disabled within the meaning of the statute requires "an individualized, fact-specific analysis." *Worthington v. City of New Haven*, No. 3:94 Civ. 00609 (EBB), 1999 WL 958627, at *8 (D. Conn. Oct. 5, 1999) (citations omitted). To prove disability under this test, an individual must do more than "merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 185 (2002). Rather, "the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience . . . is substantial.'" *Toyota*, 534 U.S. at 198 (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)).

Congress recently enacted the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009, which expanded the class of individuals entitled to protection under the ADA. As the Ninth Circuit has explained:

> In the ADAAA, Congress emphasizes that when it enacted the ADA in 1990, it "intended that the Act 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and provide broad coverage." The ADAAA rejects the Supreme Court's interpretation of the term "disability" in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), and thereby expands the class of individuals who are entitled to protection under the ADA.

*Rohr v. Salt River Project Agric. Imp. and Power Dist.*, 555 F.3d 850, 853 (9th Cir. 2009) (citations omitted). Although the Second Circuit has not addressed whether these amendments should have any retroactive application, this Court joins the numerous other circuit and district courts that have held that the ADAA amendments do not apply to conduct prior to the effective date of the statute. *See Fikes v. Wal-Mart, Inc.*, No. 08-12773, 2009 WL 961774, at *1 n.1 (11th Cir. Apr. 10, 2009); *EEOC v. Agro Distrib.*, No. 07-60477, 2009 WL 95259, at *5 n.8 (5th Cir. Jan. 15, 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 Fed. App. 850, 851, 2008 WL 4523595, at *1 (7th Cir. Oct. 9, 2008); *see also White v. Sears, Roebuck & Co.*, No. 07 Civ. 4286 (NGG) (MDG), 2009 WL 1140434, at *5 (E.D.N.Y. Apr. 27, 2009) ("The court therefore . . . concludes that the [ADAAA] should not apply to this case. This is consistent with the conclusions of other courts in this circuit that the 2008 Amendments do not apply to conduct prior to the effective date of the amended statute.") (collecting cases); *Moran v. Premier Educ. Group, LP*, 599 F. Supp. 2d 263, 271-72 (D. Conn. 2009) ("[I]t appears that every court that has addressed this issue, which includes a number of federal district courts and at least one federal appeals court, has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date.") (collecting cases). Thus, the Court must evaluate plaintiff's evidence within the legal framework in place at the time of the requested accommodations, which is 2005-07. However, as discussed *infra*, even under the

7

more stringent pre-ADAAA standard, the Court finds that plaintiff has presented sufficient evidence to defeat defendants' summary judgment motion.

In the instant action, 42 U.S.C. § 12102(2)(A) is the operative provision, since plaintiff does not contend that he is disabled as a result of having a record of his impairment or being regarded as having such an impairment. In order for plaintiff to fall within the protections of the ADA pursuant to this provision, he bears the burden of demonstrating that he has a "physical or mental impairment that substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A). Under *Colwell*'s three-step approach, plaintiff must first show that he suffers from a physical or mental impairment. In this case, plaintiff has presented sufficient evidence of injury to his right foot. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." It is evident that a major life activity relevant to this case is walking,[2] and plaintiff does not argue that any other life activities are substantially impaired.[3] Third, the plaintiff must show that his impairment "substantially limits" that major life activity. Defendants argue that plaintiff has failed to show a substantial limitation in this regard.

The Court concludes, after careful consideration of the record in this case, that disputed issues of material fact exist as to whether plaintiff was, at the time of his requests for reasonable accommodation, substantially limited in the major life activity of walking and thus disabled within the meaning of the ADA. Here, plaintiff has presented evidence that, throughout 2005, he suffered from periodic pain every day and experienced numbness and tingling in the toes of his right foot. (Pl.'s Opposition ¶¶ 12, 21.) Plaintiff had received several epidural injections as of April 10, 2003. (Pl.'s Opposition ¶ 16.) On or about October 23, 2003, a spinal stimulator was implanted in plaintiff's body in an attempt to relieve the pain and heal the injury to his foot. (Pl.'s Opposition ¶ 17.) On or about January 7, 2004, plaintiff was using a spine stimulator thirteen hours a day, and a custom orthotic shoe was prescribed and used by plaintiff. (Pl.'s Opposition ¶ 18.) On or about April 21, 2004, his physician diagnosed paresthesias and RSD of his right foot. (Pl.'s Opposition ¶ 20.) The use of a cane while walking reduced the amount of pain and swelling in his right foot. (Pl.'s Opposition ¶ 21.) On or about September 7, 2005, plaintiff was diagnosed with chronic pain syndrome, and plaintiff's physician prescribed the use of a cane while on duty. (Pl.'s Opposition ¶ 22.) The pain, according to plaintiff, is so severe that it "drives [him] crazy[,]""hurts [him], changes [his] mood[,]" and "prevents a lot of stuff." (Petrowski Decl., Exh. D, at 51.) He testified to experiencing "shooting pains all night long in [his] leg," which interferes with his ability to sleep. (Petrowski Decl., Exh. D, at 48.) Notably, plaintiff has stated that he uses a cane during all waking hours when he is not on duty at the SCCC. (*See* Petrowski Decl, Exh. D, at 50.) In fact, he would "use it 24 hours a day if [he] could." (Petrowski Decl., Exh. D, at 50.) Furthermore, plaintiff has

---

[2] The Court notes that other activities such as running and jumping have been held to not constitute major life activities within the meaning of the ADA. *See, e.g.*, *Rogers v. City of New York, Hous., Preservation & Dev.*, No. 07 Civ. 10565, 2008 WL 2937801, at *1 (S.D.N.Y. July 30, 2008); *Piascyk v. City of New Haven*, 64 F. Supp. 2d 19, 26 (D. Conn. 1999).

[3] Plaintiff also confirmed at oral argument that he does not argue that he is substantially impaired in his ability to stand or in any other major life activity other than walking.

8

proffered evidence that the expected duration of plaintiff's injury is long-term and likely to be permanent. *See* 29 C.F.R. § 1630.2(j)(2). Plaintiff's statements on this issue are supported by his physician's report.[4] (*See* Yule Decl., Exh. 11.) After construing these facts in the light most favorable to plaintiff, drawing all reasonable inferences in his favor, and foregoing any credibility assessments, the Court finds that a reasonable jury could find plaintiff to be substantially impaired in his ability to walk.[5] *See EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 438 (7th Cir. 2000) ("the record contains evidence that during the relevant times, doctors diagnosed Keane as having an impairment that required she limit her walking . . . on the basis of the testimony of both Keane and her physicians, the plaintiffs have met their burden of establishing a material dispute as to the severity of Keane's impairment"); *Gordon v. District of Columbia*, 480 F. Supp. 2d 112, 117 (D.D.C. 2007) (denying summary judgment where, *inter alia*, plaintiff required a cane to walk and her pace was far below that of average people); *Carter v. Northwest Airlines, Inc.*, No. 01 C 8655, 2003 WL 403131, at *3 (N.D. Ill. Feb. 20, 2003) (denying summary judgment where plaintiff walked with a cane, experienced burning and numbness in his foot, and could only stand for ten minutes); *Worthington*, 1999 WL 958627, at *9 ("The Court concludes that Worthington's physical impairment substantially limits the major life activity of walking. Evidence at trial establishes that Worthington used and continues to use a cane to aid her in walking."); *Cobian v. City of New York*, 1996 WL 583385, at *3 (S.D.N.Y. Oct. 10, 1996) ("[Plaintiff], on the other hand, contends that her ability to walk was substantially limited, as evidenced by her use of supportive devices. Despite the constant use of a cane, extensive walking caused [plaintiff's] knees to buckle and her legs to cramp. Furthermore, her back would sometimes 'go out,' causing her to collapse. [Plaintiff] submits numerous medical reports

---

[4] Defendants dispute the admissibility of this report, on the basis that it is untimely. However, rather than taking the drastic action of precluding the probative evidence contained in this report, the Court will consider it and alleviate any prejudice to defendants by allowing additional discovery prior to trial on this report, including giving defendants an opportunity to depose its author, Dr. John M. Feder, within forty-five (45) days of the date of this Memorandum and Order.

[5] In addition, plaintiff in this case was in possession since July 2001 of a handicapped parking permit issued by New York State. (Pl.'s Opposition ¶ 6.) Defendants contend that plaintiff's possession of this permit is "irrelevant as to whether he suffers from a disability under the ADA[,]" even though it is issued by the New York Department of Motor Vehicles and not by the SCCC or the County of Suffolk. (Defs.' Reply, at 5.) Some courts have considered such evidence to be relevant on the issue of disability. *Cf. Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 685 (8th Cir. 2003) (finding no disability as a matter of law where plaintiff walked "well enough" that "he has not obtained a handicapped parking pass"); *Hubbard v. Samson Management Corp.*, 994 F. Supp. 187, 192 (S.D.N.Y. 1998) (stating in context of claim under the Fair Housing Act, "[t]hat [plaintiff] was issued a [New York State] handicapped sticker created a presumption, and placed defendants on notice, that Hubbard was entitled to the protections afforded disabled individuals, including the Act's prohibitions on discrimination on account of disability."). However, this Court need not address this evidentiary issue at this time because, even excluding such evidence as irrelevant, plaintiff has submitted sufficient evidence of disability to defeat defendant's summary judgment motion, for the reasons discussed above.

and records, from both private and Workers' Compensation Board doctors, documenting her physical problems. [Plaintiff] has demonstrated the existence of a triable issue of material fact. As a result, defendants' motion for partial summary judgment, on the grounds that [plaintiff] is not disabled as defined in the statute, must be denied."); *cf. Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 18 (1st Cir. 2006) (not contesting the issue of disability where plaintiff wore an orthopedic device and required the assistance of a cane when walking both short and long distances).

In reaching this conclusion, the Court is not persuaded by defendants' assertion that plaintiff is not disabled as a matter of law. Although defendants point to their decision, memorialized in Savona's September 21, 2005 letter, that plaintiff was not disabled and thus not entitled to the protections of the ADA, the medical documents relied upon by defendants to support their position do not provide dispositive, uncontroverted proof on that issue. Savona testified that the medical documentation she received was "a form that came in that had been stamped by the doctor, but there were some boxes on it and it said, you know, what the injury was and whether the person was disabled or partially disabled or in danger of becoming disabled" and that "[t]he form itself basically said that he was not disabled and was not prevented from fulfilling his job responsibilities[.]" (Petrowski Decl., Exh. N at 13-14, 30.) However, this document describes the diagnosis of nature of disease or injury as "crushing injury of foot, reflex sympathetic dystrophy," and "pain in joint involving ankle and foot." (Petrowski Decl., Exh. R.) Also, the document was completed by Dr. John Feder, who has submitted an extensive narrative on plaintiff's injury as part of plaintiff's opposition to this motion and, thus, there are disputed issues of fact as to the severity of plaintiff's injury during the relevant time period. Moreover, Savona testified that, as a result of the ambiguity of this form, which she described as "a little unusual[,]" she referred plaintiff to evaluation by the County. (Defs.' ¶ 56.1 27.) After its evaluation, the County found that plaintiff was "able to perform all duties" but also "[r]ecommend[ed] use of cane as needed." (Petrowski Decl., Exh. K.) In addition, plaintiff claims that he provided medical documentation repeatedly to Williams from his physician, stating that plaintiff required a cane and that failure to use a cane would aggravate his medical condition. (Pl.'s Opposition ¶ 47.) There is at least documentation that on September 7, 2005, plaintiff was diagnosed with chronic pain and specifically instructed that plaintiff "requires use of cane for full duties, but not required for all times." (Yule Decl., Exh. 12.) And earlier, on July 18, 2005, a physician prescribed use of a cane for plaintiff's RSD stating, "may use on job to assist doing full duties as needed." (Yule Decl., Exh. 13.) To the extent that defendants relied on the aforementioned documentation to argue that plaintiff was not disabled as a matter of law, the Court disagrees and finds that plaintiff has presented sufficient evidence to create material issues of disputed fact on that issue.

Furthermore, plaintiff's statements that he is able, with pain and with the assistance of medical devices (other than a cane), to fulfill the essential functions of his job do not necessarily defeat his claim for disability under the ADA. This is the case even though plaintiff's ability to walk, as compared to the average person in the population, must be evaluated taking into consideration the corrective and mitigating aids he had

available to him.[6] *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-84 (1999); *accord Mitchell v. Girl Scouts of the U.S.A.*, No. 98 Civ. 3730 (GBD), 2003 WL 22705121, at *6 (S.D.N.Y. Nov. 17, 2003). Because plaintiff was not permitted to use a cane, as recommended by his physicians and even the County's DOHS physician, there is a genuine issue of material fact as to whether his ability to walk – *without* the assistance of a cane – was restricted in terms of duration, manner, or condition, as compared to that of an average person in the population. *Cf. Kelly v. Drexel Univ.*, 94 F.3d 102, 106 (3d Cir. 1996) (affirming district court's holding that plaintiff's inability to walk more than one mile, or jog did not, as a matter of law, substantially limit his ability to walk where he "presented *no evidence that he required any special devices like a cane* or crutches to aid him in walking.") (emphasis added); *Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005) ("The plaintiff was not 'substantially limited' in her major life activity – walking – *so long* as she used a cane.") (emphasis added). In this respect, the analysis in this case, where the defendants denied plaintiff the use of a supportive device, is unique in that the use of a cane is relevant to both the existence of a disability and the reasonableness of the requested accommodation. The Court finds, as discussed more fully *infra*, that a triable issue of material fact exists as to both elements of plaintiff's *prima facie* claim of failure to accommodate under the ADA.

In denying summary judgment on this issue, the Court recognizes the plethora of cases, both within and outside this Circuit, that confirm the high threshold that must be shown by a plaintiff to establish substantial impairment in walking. *See Potenza v. New York Dep't of Transp.*, No. 00 Civ. 707 (SHS), 2001 WL 1267172, at *10 (S.D.N.Y. Oct. 22, 2001), *aff'd*, 95 Fed. Appx. 390 (2d Cir. 2004) ("Courts have placed the bar relatively high when determining when the activity of walking has been substantially limited.").[7]

---

[6] Since the passage of the ADAAA, it is clear that this is no longer the appropriate standard. Specifically, the ADA Amendments Act of 2008, Pub. L. No. 110-25, 122 Stat. 3553 (effective Jan. 1, 2009), "expressly disavows the Supreme Court's interpretation of the ADA in . . . [*Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999),]" stating that *Sutton* "improperly weighed the impact of mitigating measures on the determination of whether an individual is disabled." *Dave v. Lanier*, No. 08-0856 (RMU), 606 F. Supp. 2d 45 49 (D.D.C. 2009). However, as noted *supra*, the Court is applying the pre-ADAAA standard to the facts of the case and plaintiff defeats the summary judgment motion even under this more stringent standard.

[7] In particular, courts have frequently found that an individual's inability to walk substantial distances or for a long period of time, *without pain or assistance*, is insufficient as a matter of law to establish disability within the statute. *See, e.g.*, *Passanisi v. Berkley Adm'rs of Conn., Inc.*, No. 3:06cv313 (PCD), 2007 WL 841946, at *7 (D. Conn. Mar. 19, 2007) ("Courts have held that moderate restrictions on the ability to walk do not amount to a substantial limitation.") (collecting cases); *Garvin v. Potter*, 367 F. Supp. 2d 548, 562 (S.D.N.Y. 2005) (holding that plaintiff's inability to walk quickly or to walk more than eight hours per day was insufficient to give rise to a question of fact as to the existence of a disability, and collecting cases); *Piascyk v. City of New Haven*, 64 F. Supp. 2d 19, 27-28 (D. Conn. 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000) (plaintiff's walking was not substantially limited despite plaintiff's 20% impairment of right ankle, 10% impairment of back, marked limp, periodic use of air cast, occasional intense pain in right ankle and inability to walk more than one-half mile); *Brower v. Continental Airlines, Inc.*, 62 F. Supp. 2d 896, 904

However, in light of the "individualized, fact-specific" nature of the inquiry, *Worthington*, 1999 WL 958627, at *8, in which "defining a precise rule is difficult,"

---

(E.D.N.Y. 1999) (holding that plaintiff's degenerative foot condition, which prohibited her from extended walking or standing, did not render her disabled for purposes of ADA, and collecting cases); *Zuppardo v. Suffolk County Vanderbuilt Museum*, 19 F. Supp. 2d 52, 56 (E.D.N.Y. 1998) (where the plaintiff alleged that he was unable to walk more than 1/8th of a mile without suffering severe pain and needing to rest, the Court found that "while [the plaintiff's] ability to walk may well be 'affected,'" it was not 'substantially impaired,' and he failed to prove he was disabled as a matter of law); *see also Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (walking with a limp, moving "at a significantly slower pace than the average person," and difficulty walking in extreme cold do not constitute a substantial impairment); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) ("moderate difficulty or pain experienced while walking does not rise to the level of a disability"); 29 C.F.R. Pt. 1630, App. § 1630.2(j) (using as an example that an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking). However, the Court finds that these cases are factually distinguishable from the instant case where plaintiff has presented, among other things, substantial evidence regarding plaintiff's injured right foot and the denial by defendants of plaintiff's use of a supportive device that was recommended by doctors. In recognition of the fact-intensive inquiry involved here, the Equal Employment Opportunity Commission has provided guidance that "[s]ome impairments may be disabling for particular individuals but not for others, depending on the stage of the disease or the disorder, the presence of other impairments that combine to make the impairment disabling or any number of other factors." 29 C.F.R. Pt. 1630, App. § 1630.2(j).

*Gordon*, 480 F. Supp. 2d at 227, the Court finds that there exist sufficient issues of material fact in this particular case as to whether plaintiff was disabled under the ADA. Accordingly, the Court concludes that summary judgment on this issue is unwarranted.

### b. Essential Functions

Even assuming *arguendo* that plaintiff's condition did substantially limit him in a major life activity, defendants claim that they are still entitled to summary judgment because they had no duty, as a matter of law, to allow plaintiff to use his cane as a reasonable accommodation. The Court disagrees and concludes that there are also material issues of disputed fact on this issue that preclude summary judgment.

The regulations define "reasonable accommodations" as those that allow an individual with a disability to perform the essential functions of a job or to enjoy the same benefits and privileges as an employee without a disability. *See* 29 C.F.R. § 1630.2(o). "Essential functions" are defined as the "fundamental" duties to be performed in the position in question. *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003); *see also* 29 C.F.R. § 1630.2(n)(1). A job function may be considered essential because: (1) the reason the position exists is to perform the function; (2) there is a limited number of employees available among whom the performance of that job function can be distributed; or (3) the incumbent in the position is hired for his or her expertise or ability to perform the particular function due to its high degree of specialization. *See* 29 C.F.R. § 1630.2(n)(2). Evidence of whether a particular function is essential includes: (1) the employer's judgment as to what job functions are essential; (2) written job

descriptions prepared for advertising or used when interviewing applicants for the job; (3) the amount of time spent on the job performing the function in question; (4) the consequences of not requiring the person to perform the functions; (5) the terms of a collective bargaining agreement if one exists; (6) the work experience of past incumbents in the job; and (7) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3).

Reasonable accommodations may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, training, materials, or policy, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). In fashioning a reasonable accommodation, employers need not accommodate an employee in the exact manner that the employee requests or provide the employee with the "best" possible accommodation. *See* 29 C.F.R. Pt. 1630, App. § 1630.9. An accommodation is deemed "reasonable" only when "its costs are not clearly disproportionate to the benefits that it will produce." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995). In *Borkowski*, the Second Circuit established the following to address the reasonable accommodation inquiry:[8]

> It follows that the plaintiff bears the burden of proving that she can meet the requirements of the job without assistance, or that an accommodation exists that permits her to perform the job's essential functions . . . . As to the requirement that an accommodation be reasonable, we have held that the plaintiff bears only a burden of production. This burden, we have said, is not a heavy one. It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this, she has made out a *prima facie* showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant. At this point the defendant's burden of persuading the factfinder that the plaintiff's proposed accommodation is

---

[8] *Borkowski* involved a claim under the Rehabilitation Act, but its guidance is applicable to claims under the ADA. Indeed, the Second Circuit has expressly stated, "[i]n *Borkowski v. Valley Central School District*, 63 F.3d 131, 137-38 (2d Cir. 1995), we laid out a two-step process to evaluate whether the failure to provide a proposed accommodation constitutes a violation of the ADA." *Jackan v. New York State Dept. of Labor*, 205 F.3d 562, 566 (2d Cir. 2000).

13

unreasonable merges, in effect with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship. For in practice meeting the burden of nonpersuasion on the reasonableness of the accommodation and demonstrating that the accommodation imposes an undue hardship amount to the same thing.

*Borkowski*, 63 F.3d at 138 (citations omitted); *see also Stone*, 118 F.3d at 98; *Gilbert*, 949 F.2d at 642. An undue hardship means an action requiring significant difficulty or expense in light of the following factors: (1) the nature and cost of the accommodation; (2) the overall financial and personnel resources of the facility or facilities involved and the effect of the accommodation on expenses and resources, or other impact on the operations of the facility or facilities; (3) the overall financial and personnel resources of the employer; and (4) the type of operation or operations of the employer, including the composition, structure, and functions of the workforce, and the geographic separateness, administrative, or fiscal relationship between facilities involved. *See* 42 U.S.C. § 12111(10).

Moreover, reasonable accommodations do not include modifications that would eliminate an essential job function. *See Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991). An accommodation is not reasonable if it requires eliminating one of the essential functions of the relevant job, because an individual with disabilities is not "qualified" under the statute if accommodating that individual would require modification of the essential job functions. *See id.* "Under guidelines accompanying EEOC regulations enacted pursuant to the ADA, courts are instructed to first determine whether the employer actually require[d] employees in the position to perform the functions that the employer asserts are essential. If so, the inquiry will then center around whether removing the function would fundamentally alter that position." *Shannon*, 332 F.3d at 101 (citing 29 C.F.R. Pt. 1630, App. § 1630.2(n)).

In this case, applying *Borkowski*, the Court finds plaintiff has presented sufficient evidence to survive summary judgment. First, plaintiff has testified that he can meet the requirements of the job without assistance of a cane, although it causes him severe pain to do so, which defendants do not dispute and repeatedly emphasize. For instance, plaintiff has testified:

> Q: My question is: Do you need the use of your cane to respond to the calls to make those rounds that you described for me?
>
> A: Not all the time.
>
> . . .
>
> Q: Would that been [sic] an essential function of your job, to patrol buildings and grounds to prevent trespassing, property damage and criminal acts and maintain order?
>
> A: Yes.
>
> Q: Can you perform that essential function without your cane?

14

A: I'm basically doing it now without the cane.

. . .

Q: Can you patrol parking lots without the use of a cane?

A: I do it now.

Q: Is another essential function of your job to respond to incidents, accidents and medical emergencies and provide assistance as necessary?

A: Yes.

Q: Can you perform that essential function without your cane?

A: I'm doing it now.

. . .

Q: Is another essential function of your job to direct and maintain a smooth flow of traffic through the campus whenever necessary?

A: I do it every day with pain.

(Petrowski Decl., Exh. D, at 18-22.) Thus, although "the plaintiff bears the burden of proving that [he] can meet the requirements of the job without assistance, or that an accommodation exists that permits [him] to perform the job's essential functions[,]" *Borkowski*, 63 F.3d at 138, plaintiff has presented evidence to overcome summary judgment on this issue. Construing the facts in a light most favorable to plaintiff and drawing all reasonable inferences in his favor, as is required at the summary judgment stage, the Court finds that a reasonable jury could conclude that the plaintiff's use of the cane would lessen the pain and swelling he experiences while walking and assist plaintiff in his ability to perform the essential job functions of a security guard.

Second, plaintiff also has presented evidence to support the existence of a reasonable accommodation – namely, the use of a cane while on duty. *See Borkowski*, 63 F.3d at 138. "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id*. Surely the request for use of a cane while on duty is a plausible accommodation, the costs of which are facially negligible, at least with respect to plaintiff only. This is certainly not a case where plaintiff's proposal is either "clearly ineffective or outlandishly costly." *Id*. at 139. Defendants do not argue that the accommodation is unreasonable based on cost or logistical considerations; they only argue that it is not necessary because plaintiff is not disabled and, alternatively, that it is unreasonable because it would eliminate an essential job function. However, there exist disputed issues of material fact on this latter issue.

In particular, the Court cannot conclude, as a matter of law, that plaintiff's accommodation request is unreasonable because it eliminates an essential function of the Campus Security Guard I job. Although an employer's interpretation of what constitutes essential functions is one source of evidence on this issue, and typically one warranting "considerable deference," *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998), it is not determinative; the Court may look to other evidence, including,

*inter alia*, written job descriptions prepared for advertising or used when interviewing applicants for the job, the amount of time spent on the job performing the function in question, the consequences of not requiring the person to perform the functions, and the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3).

As an initial matter, plaintiff argues that the "employer's judgment" in this case is internally inconsistent, as there is evidence that certain employees of the County deemed that use of a cane is compatible with plaintiff's job duties. Blower's August 29, 2005 memorandum, in particular, states that the civil service qualifications of the Campus Security Guard I position does not preclude the use of a cane and that the security guards are only the "eyes and ears" of the police. (*See* Yule Decl., Exh. 16.) Specifically, the memorandum states:

> As you know, SCCC security guards are not police officers. They do not have peace officer status. A review of the Civil Service qualifications shows that they are not required to have the physical attributes necessary for police or peace officer jobs. They merely serve as the eyes and ears for the police. A security guard's essential job functions can be done while using a cane. Therefore, the reasonable accommodation that Mr. Schroeder requested should be granted by SCCC.

(Yule Decl., Exh. 1.) Although defendants argue that Blower "is not an attorney and his advice, while appreciated and considered by those who make employment decisions, is not determinative or binding upon those making such decisions[,]" (Defs.' Memorandum, at 6), Blower is nonetheless an employee of one of the defendants in this case and, importantly, the Suffolk County ADA Compliance Officer. Thus, the evidence regarding Blower's opinion, although not dispositive, does provide support for plaintiff's position. Moreover, even if Savona did not agree with Blower that plaintiff should be permitted to use his cane, Savona did testify to the following:

> Q: Isn't it fair to say that campus security guard 1 is not a peace officer?
>
> A: Peace officer has it's [sic] own separate job description. We don't have any peace officers, but we have security guards.
>
> Q: They're not peace officers, right?
>
> A: They're not peace officers.

(Petrowski Decl., Exh. N, at 39-40.) In addition, the DOHS evaluation recommended that plaintiff use a cane on the job. Thus, defendants' own evidence shows the existence of disputed facts regarding the Campus Security Guard I's essential job functions.

The disputed nature of this evidence is further highlighted when the civil job description is considered. Williams testified that he did not review the job description of plaintiff's post before denying plaintiff's request for use of a cane. (*See* Petrowski Decl, Exh. O, at 28.) Civil Service Job description for Campus Security Guard I indicates that "[t]he incumbent patrols on foot, bicycle *or* by car, directs traffic and assists and directs students and visitors." (Petrowski Decl., Exh. E) (emphasis added.) Generally, "[a]n employee in this class patrols the grounds and buildings of a Suffolk County

Community College campus to prevent trespassing and property damage and to maintain public order." (Petrowski Decl., Exh. E.) In terms of physical responsibilities where plaintiff's injury might be at issue, a campus security guard must also "respond[] to all incidents, accidents and medical emergencies, providing necessary assistance" and must have the "ability to intervene in situations requiring physical capabilities[.]" (Petrowski Decl., Exh. E.) Despite these requirements, plaintiff argues, and defendants do not contest, that the campus security guard job is not a certified law enforcement position nor has New York State peace officer status. (*See* Pl.'s Opposition ¶ 2.) Specifically, these guards have "no handcuffs, no gun, no weapons, no requirement to chase after purported alleged criminals[.]" (Pl.'s Opposition ¶ 37.)

Indeed, it is disputed as to what extent plaintiff's position requires walking, rather than driving in patrol cars, bicycling, or standing in a guard house. It is also disputed as to what *kind* of walking, or any physical demands beyond walking but bearing on his foot's condition, such as running, is essential for the job. Most importantly, regardless of the extent and nature of the walking involved, there is also a factual dispute regarding how the effectiveness of such walking requirements would be diminished by plaintiff's cane use. In fact, it is plausible that allowing plaintiff to use a cane would result in more effective walking and plaintiff's increased ability to meet any physical demands of the job that depend in part on use of his right foot. There is, therefore, a triable issue of how much time is actually required or spent on the job's physical requirements that necessarily implicate plaintiff's foot condition.

Furthermore, plaintiff has been employed in the capacity of Campus Security Guard I since 1979. His own experience and assessment of duties in such a post is, therefore, relevant. *See* 29 C.F.R. § 1630.2(n)(3). In terms of the required extent of his walking, plaintiff has testified that, "[t]here's nights I get a patrol car. There are nights I'm on foot. There are nights I'm in the guard booth." (Petrowski Decl., Exh. D, at 8.) In distinguishing his job from that of a law enforcement officer, he also states that he is "just a civilian with a blue uniform that has no basic power." (Petrowski Decl., Exh. D, at 22.) Finally, plaintiff's argument about the distinction between campus security guards and law enforcement officers calls for due consideration about the consequences of not requiring plaintiff to perform the functions at issue, *see* 29 C.F.R. § 1630.2(n)(3), where campus security guards are considered to be supplemental to, and not in place of, police officers. For these reasons, the Court is unable to determine, as a matter of law, "whether the employer actually require[d] employees in the position to perform the functions that the employer asserts are essential" and "whether removing the function would fundamentally alter that position." *Shannon*, 332 F.3d at 101 (citing 29 C.F.R. Pt. 1630, App. § 1630.2(n)).

The conclusion in this case is also consistent with the notion that although an employer is not required to accommodate an employee by eliminating an essential function of the job, it cannot satisfy its reasonable accommodation obligation merely by assuming that the only way to accommodate the employee is to eliminate the function. *See Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 106 (2d Cir. 2001) ("We agree with Parker that an employer enjoys no blanket shield from ADA liability based on the employer's incorrect belief that no reasonable accommodation could enable the plaintiff employee with a disability to perform his essential job duties."). Rather, under the ADA, employers and employees share responsibility for determining an appropriate

accommodation, through a flexible, interactive process. *See* 29 C.F.R. § 1630.9; *see also Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 Fed. Appx. 943, 945-46 (2d Cir. Dec. 22, 2008) ("With regard to the disability discrimination claims, federal regulations contemplate an 'informal, interactive process' involving employer and employee to identify a reasonable accommodation. An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate.") (quoting 29 C.F.R. § 1630.2(o)(3)); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001), *cert. denied*, 535 U.S. 1011 (2002) ("Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations."). The employee possesses the initial responsibility to inform the employer that he needs an accommodation and to identify the limitation that needs accommodating. *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). Once an individual with a disability requests an accommodation, the responsibility for fashioning a reasonable accommodation is shared between the employer and the employee. *See Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134-36 (7th Cir. 1996); *Worthington*, 1999 WL 958627, at *13; *Porter v. Mesquite Indep. Sch. Dist.*, No. 3:96 Civ. 3311 (BF), 1998 WL 329361, at *7 (N.D. Tex. June 11, 1998). At this point, the employer must make a reasonable effort to determine an appropriate accommodation based on the particular job involved and consultation with the employee. *See, e.g.*, *Williams v. British Airways, PLC*, Nos. 04 Civ. 0471, 06 Civ. 5085 (CPS) (SMG), 2007 WL 2907426, at *9 ("While plaintiff has the burden of identifying an accommodation, the defendant-employer must take affirmative steps to assist the plaintiff in this process. 'Failure of an employer to act in good faith will preclude summary judgment against an employee on a claim of failure to accommodate.'" (quoting *Picinich v. United Parcel Service*, 321 F. Supp. 2d 485, 511 (N.D.N.Y. 2004) (additional citations omitted)); 29 C.F.R. Pt. 1630, App. § 1630.9. In circumstances where there is an alleged breakdown of the interactive process, "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Beck*, 75 F.3d at 1135.

Here, plaintiff has presented evidence that he informed his employer of his need for accommodation. As stated *supra*, there is evidence that he asked on several occasions for accommodations, both orally and in written form to those in supervisory capacities. The plaintiff also enlisted the aid of Bruce Blower, who proposed a recommended accommodation on plaintiff's behalf.

The defendants, through Laurie Savona, offered plaintiff the following accommodations: (1) use of a cane only on the 11:00 p.m. - 7:00 a.m. shift, and (2) increased work days in a booth. (*See* Petrowski Decl., Exh. L.) As a threshold matter, these are also possible accommodations to plaintiff's disability that may be considered reasonable. *See* 42 U.S.C. § 12111(9) (reasonable accommodations include "job restructuring, part-time or modified work schedules"); *Medlin v. Rome Strip Steel Co., Inc.*, 294 F. Supp. 2d 279, 292 (N.D.N.Y. 2003) ("[I]t is not incumbent on plaintiff to specifically request any and all accommodations that could possibly be reasonable."). However, the regulations define "reasonable accommodations" as those that, *inter alia*, allow an individual with a disability *to enjoy the same benefits and privileges as an employee without a disability*. *See* 29 C.F.R. § 1630.2(o) (emphasis added). "The Second

Circuit has held that the regulations of the Equal Employment Opportunity Commission ("EEOC") 'are entitled to "great deference" in interpreting the ADA.'" *White*, 2009 WL 1140434, at *6 (quoting *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 151 (2d Cir. 2000) (citation omitted)). The Court thus cannot conclude, as a matter of law, that plaintiff, who has been employed in his position since 1979 and is purportedly the most senior of any employees in his position (*see* Pl.'s Opposition ¶ 2), can be said to enjoy the same benefits and privileges as an employee without a disability when his only options are to work the 11 p.m. - 3 a.m. shift or work more days in a booth. Thus, there remain questions of disputed fact as to whether the defendants made a reasonable effort to determine the appropriate accommodation for plaintiff in this case.

Moreover, although it is true that an employer is not required to provide the "best" possible accommodation or one that is specifically requested by the employee, and that an employer's willingness to accommodate does not demonstrate that an employer believed itself legally obligated to accommodate under the ADA, *Colwell*, 158 F.3d at 646, in this case, the defendants' other proposed accommodations, including the use of the cane in an alternative shift, create genuine issues of material fact as to whether the denial of plaintiff's requested accommodation was reasonable. In other words, defendants did not simply deny plaintiff the use of a cane – they denied him the use of a cane only during his preferred shift. Because defendants argue only that the "interaction with the College community" is a distinguishing feature of the 3 p.m. - 11 p.m. shift, this leaves a factual issue as to whether the essential functions of a campus security guard vary depending on the shift. Defendants conceded at oral argument that the reduced visibility of plaintiff is the basis for their offer to him to work the night shift and argued that this reduced visibility would give students a better sense of security, avoid the undermining of deterrence of thefts and other incidents, and avoid the reduction in morale felt by other campus security guards who prefer to see themselves as more than the "eyes and ears" of the campus. Again, none of the aforementioned reasons establish, as a matter of law, that the use of a cane by a security guard during the day eliminates an essential function of his job because there are disputed issues of fact regarding what such essential functions are and if plaintiff is able to perform such essential functions with reasonable accommodation.

In short, construing the evidence most favorably to plaintiff, a reasonable jury could find that defendants' proffered accommodations were inconsistent with their position that use of a cane would eliminate an essential function of the Campus Security Guard I job. Such evidence, coupled with the other evidence set forth by plaintiff discussed *supra*, creates a basis from which a reasonable jury could conclude that the use of a cane would not in fact eliminate the essential functions of plaintiff's job and, in turn, that plaintiff could perform the essential functions of his job with reasonable accommodation, namely, the use of a cane. Further, there is disputed evidence regarding whether defendants were responsible for a breakdown in the process of finding a reasonable accommodation for plaintiff's alleged disability, and thus the issue of whether defendants failed to provide plaintiff with reasonable accommodation must go to a jury. In light of defendants' failure to demonstrate the unreasonableness of plaintiff's request as a matter of law, and the related issues of disputed fact that underlie the reasonableness of the accommodations that defendants did offer plaintiff, the Court denies summary judgment in defendants' favor on these issues.

In sum, construing the evidence most favorably to plaintiff and making all inferences therefrom in his favor, the Court concludes that plaintiff has presented sufficient evidence to create disputed issues of material fact on the ADA claim that cannot be decided by the Court on summary judgment, but rather must be presented to a jury.

### IV. CONCLUSION

For the foregoing reasons, the Court denies defendants' motion for summary judgment with respect to plaintiff's claim for failure to accommodate, in violation of the ADA, which is the only remaining claim that is pending in this action. Discovery is reopened, under the supervision of Magistrate Judge Wall, for a period of forty-five (45) days, to allow defendants to have the opportunity to depose Dr. John M. Feder.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 22, 2009
 Central Islip, NY

\* \* \*

The attorney for plaintiff is Edward Yule, Esq., 46 Woodbine Avenue, Northport, New York 11768. The attorney for defendants is John R. Petrowski, Esq., Assistant County Attorney, Suffolk County Attorney's Office, 100 Veterans Memorial Highway, Hauppauge, New York 11788.